## PEOPLE *v* JOHN MARTIN

1. CRIMINAL LAW—CROSS-EXAMINATION—DISCRETION.

Limiting defendant's cross-examination of a prosecution witness as to the number of times he had viewed photographs of defendant before identifying him at trial was within the trial judge's discretion even where the witness had been inconsis-

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 333 *et seq.*
[2] 21 Am Jur 2d, Criminal Law § 313 *et seq.*
What constitutes "custodial interrogation" within rule of Miranda v. Arizona requiring that suspect be informed of his federal constitutional rights before custodial interrogation. 31 ALR3d 565.
[3] 5 Am Jur 2d, Appeal and Error § 545.
[4] 21 Am Jur 2d, Criminal Law § 341.
30 Am Jur 2d, Evidence § 998.
[5] 21 Am Jur 2d, Criminal Law § 236.
[6] 53 Am Jur, Trial § 463 *et seq.*

tent in his testimony about the photographs where the witness had reviewed the photographs in regard to another criminal investigation and the trial judge could conclude that more prejudice to defendant would have resulted from continued cross-examination than from its termination.

2. CONSTITUTIONAL LAW—RIGHT TO COUNSEL—PHOTOGRAPHIC IDENTIFICATION.

The constitutional right to have counsel present at a photographic identification does not attach until the accusatory stage is reached in the investigation of a crime; consequently a defendant was not denied his constitutional right where he was first connected with a crime by a police officer who looked at his photograph at a time when his identity was not known to the police.

3. CRIMINAL LAW—IDENTIFICATION—PRESERVING QUESTION.

A defendant may not challenge on appeal the independence of the in-court identification of defendant tainted by suggestive out-of-court identification procedures where defendant failed to make a timely motion to suppress.

4. CRIMINAL LAW—EVIDENCE—CERTIFICATE—LICENSE—BOARD OF PHARMACY.

Admission into evidence of a certificate from the State Board of Pharmacy stating that no one with defendant's name and a certain address had a license to sell narcotics was proper even where defendant claimed he did not live at that address where there was sufficient other evidence that linked defendant to the particular address.

5. CRIMINAL LAW—CONTINUANCE—PRETRIAL PUBLICITY.

Defendant's motion for a continuance of his trial for selling narcotics based on the state-wide publicity about drug abuse published just prior to the trial was properly denied where the articles were general in nature and made no reference to the defendant and where there is no indication in the record that the jurors were so prejudiced by the articles as to not be able to reach an impartial verdict nor is there any evidence of a deep pattern of prejudice and bias within the community.

6. CRIMINAL LAW—CLOSING ARGUMENT—REMARKS OF PROSECUTOR.

The remark of the prosecutor in closing argument calling defendant a narcotics "pusher" was not reversible error even where no evidence was introduced linking defendant to any sales

other than the one he was charged with where the summation taken as a whole was not clearly abusive and the trial judge instructed the jury to make its findings of fact from what was said by the witnesses, not from what counsel said.

Appeal from Saginaw, Hazen R. Armstrong, J. Submitted Division 3 November 2, 1971, at Lansing. (Docket No. 10357.)   Decided January 18, 1972. Leave to appeal granted and case remanded to circuit court for resentencing, 387 Mich 766.

John Martin was convicted of selling narcotics. Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George E. Thick, II,* Prosecuting Attorney, and *Irwin F. Hauffe, II,* Assistant Prosecuting Attorney, for the people.

*Achilles J. Tarachas,* for defendant.

Before: Danhof, P. J., and Bronson and Targonski,* JJ.

Bronson, J.   Defendant was convicted in the Saginaw County Circuit Court by a jury of selling narcotics, specifically heroin, contrary to MCLA § 335-.152 (Stat Ann 1971 Rev § 18.1122).   His motion for a new trial was denied, and he was sentenced to prison for a term of 20 to 25 years.   He now timely appeals as of right, raising six issues which merit discussion.

The alleged sale took place between the defendant and a plainclothes police officer, Udell Holmes, on November 11, 1969.   Holmes testified that he was taken to a house at 215 South Tenth Street in Saginaw by a third person and that he purchased five

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

little packets of which the contents of one was later analyzed as heroin. The purchase was from a man later identified at both the preliminary examination and the trial as the defendant, John Martin. Defendant's arrest was based on a lab analysis of the substance sold as heroin and on a photographic identification of defendant by Officer Holmes that occurred two or three days after the sale.

The issues raised by defendant will be listed as discussed.

I. *Did the trial court err in limiting defense counsel's cross-examination of Officer Holmes as to his out-of-court photographic identification of defendant?*

The facts pertinent to this issue follow. Upon returning to the police station after the sale, Holmes was shown five or six photographs by a Detective Shelby for the purpose of identifying the seller. At the preliminary examination, upon questioning by the prosecutor, Holmes testified as follows:

"*Q.* And did he also show you, was John Martin's picture in that group of pictures, that day?

"*A.* It was in that group, but it was a real old one, and I couldn't identify it.

"*Q.* Alright, how many pictures did you see, do you know?

"*A.* Maybe five or six, something like that.

"*Q.* Alright, and you couldn't identify any of them as the man, who you made the buy from earlier in the day, is that right?

"*A.* No, sir, I wasn't specific.

"*Q.* Alright, well, were you specific at that time, when he showed you those pictures? Did you tell Detective Shelby, that you couldn't identify any of those men?

"*A.* Yes, sir. I looked at the old picture. I said, 'It could be him, but I'm not sure.'

"*Q.* I see.

"*A.* Because it was an old picture.  I don't know how old it was."

At trial, upon questioning by defense counsel, Holmes testified thus:

"*Q.* Okay.  Now, after you left that house you say you returned back to the police department, isn't that correct?

"*A.* Yes, sir, I did.

"*Q.* Okay.  And at that time, isn't it true that you were shown some photographs of certain people?

"*A.* Yes, sir, I was.

"*Q.* All right.  Now, did you know John Martin by name when you left his house?

"*A.* All I knew was John, sir.

"*Q.* That's all you knew was John, right?  You knew no name?  Now, were you shown a photograph of John Martin at police headquarters when you returned back on that particular day?

"*A.* None that I could identify of the defendant, sir.

"*Q.* Do you know whether or not you did see a photograph of the defendant on that particular day?

"*A.* None that I could identify, sir.

"*Q.* All right.  How many photographs were shown to you, if you recall?

"*A.* About six, I believe, sir."

Detective Shelby later testified, upon questioning by defendant counsel, as follows:

"*By Mr. Tarachas:*
"*Q.* Officer Shelby, the testimony of Udell Holmes was that the photographs that you showed him the day he came in on November 11 was an old photograph of John Martin, would that testimony be wrong?  That you showed him an old photograph.

"*A.* I would say that there was a John Martin, a

man by the name of John Martin, among the photographs I showed him, but it was not the John Martin.

\* \* \*

*"Mr. Tarachas:* Are you saying there was another John Martin's picture in there?
*"A.* Yes, sir."

At both the preliminary examination and at trial Holmes testified that two or three days after the sale he was shown two pictures and only two pictures, both of which he identified as the seller. These pictures were of the defendant, John Martin. At the preliminary examination, on cross-examination Holmes testified that he looked at these same two pictures about two or three weeks before the exam. On redirect examination he testified that he looked at the two pictures only once. Defense counsel, on recross, explored this apparent inconsistency. It was then established that he did indeed see pictures of defendant at a later time, but only in connection with another case.

At the trial, defense counsel again sought to pursue the issue of how many times Holmes viewed defendant's pictures prior to trial. The prosecutor then objected and the jury was excused. A conference was held in chambers. The prosecutor argued that there was no timely motion to suppress the out-of-court identification and that it could not be attacked at trial. Defendant argued that he had the right to cross-examine further relative to the identification and to introduce the photographs. The trial court ruled that the photographs were inadmissible and that cross-examination relative to the identification should cease.

Defendant argues on appeal that limiting his cross-examination of Officer Holmes was error. In *Simmons* v. *United States* (1968), 390 US 377, 384

(88 S Ct 967, 971; 19 L Ed 2d 1247, 1253), the United States Supreme Court made the following observation concerning cross-examination in photographic identification cases:

"The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error."

The scope of cross-examination is within the trial judge's discretion. *People* v. *McClure* (1971), 29 Mich App 361.

Defendant sought to attack the identification procedure through cross-examination of Officer Holmes. We must determine whether the trial judge abused his discretion in limiting the cross-examination. Had defendant been allowed to pursue the issue of how many times Officer Holmes viewed pictures of the defendant subsequent to the original identification, it is highly likely that the testimony extracted would have been the same as that brought out at the preliminary examination; namely that Officer Holmes did view the pictures again, but in regard to another case. It appears that more harm to defendant would have resulted had the jury known his picture was in a police file of possible criminals and that he was suspected in another crime. See *People* v. *Hill* (1970), 28 Mich App 502. Consequently, any prejudice which may have resulted was harmless. *People* v. *Wardell* (1970), 26 Mich App 69.

II. *Was defendant's constitutional right to counsel violated when no counsel was present during a pretrial photographic identification?*

Officer Holmes identified defendant in a photographic identification two or three days after the

sale, when he was shown two pictures of defendant. This was the only time that Holmes looked at photographs to connect defendant with the crime in the instant case. Only when Holmes made this identification did police know defendant's identity. Prior to this he was known to them only as "John".

Defendant was identified during the "investigatory stage" where no right to counsel exists. The right does not attach until the "accusatory stage". *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149); *Gilbert* v. *California* (1967), 388 US 263 (87 S Ct 1951, 18 L Ed 2d 1178); *Thompson* v. *State* (1969), 85 Nev 134 (451 P2d 704). Defendant had no constitutional right to counsel when the photographic identification took place.

III. *Was the out-of-court photographic identification of defendant so impermissively suggestive as to deny defendant due process of law?*

The defendant did not object to the out-of-court identification below. This does not preclude this Court from reviewing an alleged violation of constitutional rights. *People* v. *Limon* (1966), 4 Mich App 440.

Defendant argues the out-of-court photo identification was unduly suggestive. The test for setting aside a photographic identification is found in *Simmons* v. *United States, supra:*

"[W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Assuming, but not deciding, that the identification procedures used in this case were suggestive, an in-court identification is not thereby tainted if there is an independent basis of identification. *United States* v. *Wade, supra; People* v. *Hutton* (1970), 21 Mich App 312; *People* v. *Anderson* (1971), 29 Mich App 578. The test for determining whether the in-court identification has an independent basis is found in *Wong Sun* v. *United States* (1963), 371 US 471, 488 (83 S Ct 407, 417; 9 L Ed 2d 441, 455):

" '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

See *People* v. *Childers* (1969), 20 Mich App 639, 647.

Normally, the independence of the in-court identification is made at a hearing out of the jury's presence. Defendant lost his right to such a hearing by failing to make a timely motion to suppress. *People* v. *Childers* (1969), 20 Mich App 639. This Court will not consider such an issue where it is not preserved at trial or in a motion for new trial and does not come within the rule stated in *People* v. *Degraffenreid* (1969), 19 Mich App 702. The record before us does not show a mistake which requires a new trial.

IV. *Did the trial court err by admitting into evidence a document stating that defendant did not have a license to sell narcotics?*

The trial judge admitted a document signed by the Michigan Director of Drugs and Drug Stores stating that there is no license to sell narcotics for John Martin of 215 South Tenth Street, Saginaw, Michigan. It was admitted under MCLA § 335.54a (Stat

Ann 1971 Rev § 18.1074[1]) which requires that such a document be certified.

Defendant contends the document was inadmissible due to improper certification. He further contends the presence of the South Tenth Street address on the document was prejudicial since he claimed he did not live at that address.

The document complied with the statutory requirements. It contained statements by the appropriate public official that he was in charge of drug license records pursuant to cited statutory authority and that defendant had no license. It was signed by that official and had the State Board of Pharmacy seal.[1]

The defendant's contention that the address on the document was prejudicial to him must also fail. This was not the only evidence linking defendant to the South Tenth Street address. The record shows that the defendant was arrested at that address, which he admitted; that he gave the South Tenth Street address when he was booked; and that a John Martin of the same address had filed a complaint with the police in September, 1969. The error, if any, was harmless.

V. *Did the trial court err in denying defendant's motion for a continuance based on current publicity about narcotics and drug abuse of a general nature which did not relate specifically to defendant?*

On the weekend preceding defendant's trial there was considerable state-wide publicity concerning drug abuse arising from the Goose Lake Rock

---

[1] The document was *prima facie* evidence that defendant had no license. It was not rebutted. The question of whether *People* v. *Rios* (1971), 386 Mich 172, which held that the prosecution must prove no license as an element of the crime in narcotics cases, applies is thus not before this Court.

Festival. Defendant contends that this publicity denied him his right to an impartial trial.

The grant or denial of a continuance is within the trial judge's discretion subject to reversal for a clear abuse of discretion. *People* v. *Pruitt* (1970), 28 Mich App 270. In *People* v. *Andrew Thomas* (1970), 27 Mich App 539, this Court upheld the denial of a continuance where a local paper ran a series on drug abuse just prior to the defendant's trial. As in the instant case, the articles were general in nature and made no reference to the defendant. The Court stated that "the only requirement is that a juror be able to view the evidence alone without influence from prior impressions or opinions". *Thomas, supra*, at 543. There is no indication in the record that the jurors were so prejudiced by the articles as to not be able to reach an impartial verdict nor is there any evidence of a "deep pattern of prejudice and bias within the community". *Irvin* v. *Dowd* (1961), 366 US 717 (81 S Ct 1639, 6 L Ed 2d 751). The record does show that the trial judge took note of the problem raised by the defendant when the jury was chosen and that defendant did not object to the jury finally chosen. There was no abuse of discretion in denying the continuance.

VI. *Were the prosecutor's remarks in closing argument, including calling defendant a "pusher" so prejudicial and inflammatory as to deny defendant a fair trial?*

In his closing argument, the prosecutor made the following remark:

"This is what we allege are the circumstances here. What is a seller of narcotics? What does he do? Well, I think we have to call him a pusher. I think that's a synonymous term. Who goes to the pusher? Many people."

Defendant argues there was no evidence presented which permitted the prosecutor to make this statement.

A prosecutor in closing argument may draw inferences from facts in the record. *People* v. *Morlock* (1925), 233 Mich 284; *People* v. *Badge* (1968), 15 Mich App 29; *People* v. *Russell* (1970), 27 Mich App 654. This Court will reverse only when a clear case of abuse is shown by a prosecutor's remarks which prejudice defendant's rights. *People* v. *Dawson* (1971), 29 Mich App 488; 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 621, p 801. The facts in this case show defendant charged with a single sale of a small amount of heroin. There is no evidence of sales to other people. In the context of the entire summation, we find no clear abuse.

If any prejudice occurred, it was cured by the trial court's instruction to the jury that it was to make its findings of fact and draw inferences from what was said by the witnesses, not from what counsel said. See *Frazier* v. *Cupp* (1969), 394 US 731 (89 S Ct 1420, 22 L Ed 2d 684); *People* v. *Piggee* (1970), 27 Mich App 367.

Affirmed.

All concurred.