PEOPLE v FOSSEY

1. EXTRADITION—CRIMINAL LAW—SPEEDY TRIAL.

A prosecutor's failure to use the provisions of the interstate agreement on detainers in obtaining defendant's release from a Federal penitentiary and in transporting him to Michigan to stand trial did not deny defendant a speedy trial where the Federal government was not a party to the agreement until over four months after defendant had been already brought back to this state to stand trial, and therefore the prosecutor was unable to effect an earlier return of the defendant under the act (§ 8, 84 Stat 1397–1403).

2. EXTRADITION—CRIMINAL LAW—SPEEDY TRIAL.

A prosecutor's failure to use a Federal statute permitting the return of a Federal prisoner who has been indicted, informed against, or convicted of a felony in a court of record of any state did not deny a defendant a speedy trial where the prosecutor was only in possession of warrants for defendant issued by a Michigan district court which is not a court of record (18 USCA 4085; MCLA 600.8101).

3. CRIMINAL LAW—SPEEDY TRIAL—180-DAY RULE—FEDERAL INMATE.

The statute requiring that untried warrants, indictments, information or complaints pending against an inmate of a Michigan penal institution must be disposed of within 180 days after the Department of Corrections gives the proper statutory notice to the prosecutor of the county where such actions are pending does not apply to an inmate of a Federal prison in a foreign jurisdiction (MCLA 780.131).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law § 250.
    Constitutional or statutory right of accused to speedy trial as affected by his incarceration for another offense, 118 ALR 1046.
[3] 21 Am Jur 2d, Criminal Law § 241.
[4] 21 Am Jur 2d, Criminal Law § 254.
[5] 21 Am Jur 2d, Criminal Law §§ 241, 256.
[6, 7] 21 Am Jur 2d, Criminal Law §§ 368, 369.
[8] 21 Am Jur 2d, Criminal Law § 218.

4. CRIMINAL LAW—SPEEDY TRIAL—BAIL—FEDERAL INMATE.

The statute requiring that every person held in prison upon an indictment either be tried at the next term of court after six months from time of imprisonment or be bailed on his own recognizance does not apply to a prisoner held by the Federal government in a Federal prison in another jurisdiction (MCLA 767.38).

5. CRIMINAL LAW—SPEEDY TRIAL—FEDERAL INMATE.

A criminal defendant was not denied a speedy trial even where the prosecutor waited seven months between when he put a detainer on defendant's prison record and when he extradited defendant to stand trial where defendant was being held in a Federal prison in Georgia and the Federal authorities expressed reticence on releasing defendant before the expiration of the remaining seven months of his term, and where the prosecutor waited to see whether Indiana would extradite defendant for offenses committed in that state thereby saving Michigan part of the $800 costs of extraditing defendant from Georgia.

6. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATION—INVESTIGATORY STAGE.

Identification of defendant from photographs during the investigatory stage before his arrest in the absence of defendant's counsel did not deny defendant due process since the right to have an attorney present during identification procedures does not attach until the accusatory stage.

7. CRIMINAL LAW—IN-COURT IDENTIFICATION—INDEPENDENT BASIS.

Complainant's positive identification of defendant at a lineup after he had originally identified defendant from photographs, was sufficient to afford complainant's subsequent in-court identification an independent basis; therefore, even assuming that the original photographic identification was suggestive, the in-court identification was not thereby tainted.

8. ROBBERY—ASSAULT AND BATTERY—SINGLE TRANSACTION—CRIMINAL LAW.

Defendant should have been charged only with attempted safe robbery where he assaulted a watchman for the sole purpose of robbing a company safe and did not attempt to rob the watchman's person; therefore, his conviction of assault with intent to rob and steal while armed is reversed while his conviction of attempted safe robbery is affirmed.

Appeal from Van Buren, David Anderson, J. Submitted Division 3 March 8, 1972, at Grand Rapids. (Docket No. 11442.) Decided May 30, 1972. Leave to appeal applied for.

Weldon T. Fossey was convicted of assault with intent to rob while armed and attempted safe robbery. Defendant appeals. Conviction of assault with intent to rob while armed reversed; conviction of attempted safe robbery affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William C. Buhl,* Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Larry R. Farmer,* Assistant Defender, for defendant.

Before: T. M. BURNS, P. J., and FITZGERALD and DANHOF, JJ.

T. M. BURNS, P. J. The defendant was tried and convicted by a jury of assault with intent to rob while armed (MCLA 750.89; MSA 28.284) and attempted safe robbery (MCLA 750.531; MSA 28.799). He appeals as of right from the imposition of a sentence of life on each count.

On October 23, 1969, a night watchman was assaulted and the Hartford Farm Supply vault was the scene of an attempted safe breaking. Following an investigation, a warrant was issued charging the defendant with assault with intent to rob while armed. Shortly thereafter, a second warrant was issued against the defendant charging him with attempted safe burglary. These warrants were given to the State Police and detainers were placed on the NCIC Lien Network. In December of 1969, the State Police were notified that the de-

fendant had been arrested in Bay Minette, Alabama, for switching registration plates on a car and carrying a concealed weapon. The State Police conveyed this information to the prosecutor who then sent the warrants to the Bay Minette sheriff. Apparently, before these warrants reached the sheriff, the defendant was released on a writ of *habeas corpus.* The defendant was then rearrested by an Alabama US marshal for violation of the Dyer Act. When the Bay Minette sheriff received the warrants, he returned them to the prosecutor indicating that the defendant had been released from his custody and was now in the custody of the Alabama US marshal. The prosecutor then sent the warrants to the Alabama US marshal, but the defendant had posted bail and was released from the custody of the Alabama US marshal before the warrants reached him. Forty days after that, the defendant was arrested for parole violation in Florida. However, by this time the warrants had been returned by the US marshal in Alabama to the prosecutor. The prosecutor then mailed the warrants to the US marshal in Florida. However, before the warrants got to the US marshal there, the defendant was transferred from the custody of the Florida US marshal to the Alabama US marshal. The Florida US marshal returned the warrants to the prosecutor indicating the above-mentioned transfer. The prosecutor then sent the warrants to the US marshal in Alabama. Before the warrants got to the US marshal in Alabama, the defendant was transferred to the Federal Penitentiary in Atlanta, Georgia. The US marshal in Alabama again returned the warrants to the prosecutor indicating this transfer. Finally on March 17, 1970, a detainer was sent to the place where the defendant was incarcerated—Atlanta, Georgia. The prosecutor then contacted the officials of the

Federal Penitentiary by telephone in hopes of determining how to get the defendant back to Michigan to stand trial. The prosecutor had previously studied the United States Code Annotated and the Federal Rules of Criminal Procedure in hopes of determining how to accomplish this but had not gotten too far. On July 16, 1970, the defendant sent a letter to the prosecutor demanding a speedy trial. This letter was received by the prosecutor in due course of the mail. Meanwhile, a spokesman at the Federal Penitentiary in Atlanta indicated to the prosecutor that Indiana was considering extraditing the defendant for trial and that it would be less expensive to the prosecutor if the defendant was brought to trial in Michigan from Indiana than if he were brought to trial in Michigan from Georgia. Therefore, the prosecutor chose to wait and see what Indiana was going to do. The penitentiary officials had expressed some reticence in letting the defendant go due to the fact that his term of incarceration was not to expire until October of 1970. At the same time, the prosecutor contacted the prosecutor in Berrien County who also had outstanding warrants against the defendant, and they agreed to split the costs of bringing the defendant to Michigan. In late October of 1970, the prosecutor received information from the penitentiary officials that Indiana was not going to extradite the defendant there. Shortly thereafter, the prosecutor received a consent to move the defendant—this consent coming from the United States Bureau of Prisons on October 23, 1970. Shortly thereafter, the defendant was transferred from Atlanta, Georgia to Michigan to stand trial for the charges outlined above. This release was accomplished by obtaining a writ releasing the defendant from the custody of the Federal authorities and by paying all the expenses, approximately

$800, in advance for shipment of the defendant to Michigan. On November 23, 1970, a preliminary examination was held at which time the defendant was bound over for circuit court trial. That trial was held on January 27 through 29, 1971.

We will discuss defendant's issues in the order presented.

*1. Was defendant denied his Sixth Amendment rights of speedy trial by the prosecution's failure to apply and comply with the appropriate Federal and state statutes regarding the right to a trial within a specified number of days?*

Appellate counsel for defendant first contends that but for the ignorance of the trial court, the prosecutor, and defendant's trial counsel, the appropriate laws available would have been utilized to secure for defendant a speedy trial and that the failure to do so constitutes a denial of defendant's constitutional rights. None of the "appropriate laws" cited by appellate counsel are applicable to the instant case.

Defendant first contends that the Interstate Agreement on Detainers, MCLA 780.601; MSA 4.147(1), could have been utilized by the prosecutor in securing the release of the defendant and the transportation of him to Michigan to stand trial. However, as the prosecutor points out, the Interstate Agreement on Detainers Act, § 8, 84 Stat 1397–1403 (1970), 18 USCA Appendix (1972 Cum Supp pp 80–85) provides: "This act shall take effect on the ninetieth day after the date of its enactment [December 9, 1970]". It is, therefore, readily apparent that the United States government, which had custody of defendant, was not a party to the Interstate Agreement on Detainers until over four months after defendant had already been brought back to Michigan to stand trial. It was,

therefore, impossible for the people to utilize the cited act to effect an earlier return of the defendant.

Defendant next·points to 62 Stat 850 (1948), 18 USCA 4085, which would have provided a means for the prosecutor to bring the defendant to Michigan from the Federal Penitentiary in Georgia. However, that statute applies only once a "federal prisoner has been indicted, informed against, or convicted of a felony in a court of record of any state". In the instant case the prosecutor was in possession only of warrants which were issued by a district court judge. Since MCLA 600.8101; MSA 27A.8101 provides that " * * * the district court is not a court of record", 18 USCA 4085 would not apply.

Next defendant contends that MCLA 780.131; MSA 28.969(1) should have been utilized. That statute provides in part:

"Whenever the department of corrections shall receive notice that there is pending in this state any untried warrant, indictment, information or complaint setting forth against any inmate of a penal institution *of this state* a criminal offense * * * ." (Emphasis supplied.)

Since defendant was incarcerated in a Federal prison in a foreign jurisdiction and the above-quoted statute applies only to penal institutions of this state, it obviously does not apply to the instant situation.

Finally, defendant asserts that MCLA 767.38; MSA 28.978 could have been utilized by the prosecutor. That statute provides:

"Every person held in prison upon an indictment shall, if he require it, be tried at the next term of court after the expiration of 6 months from the time when he

was imprisoned, or shall be bailed on his own recognizance, * * * ."

Defendant is here asserting that the Michigan courts, by virtue of a Michigan statute, have the authority to order a prisoner bailed who is being held by the United States government in a Federal prison in another jurisdiction. We find no merit in defendant's position. The Federal government is not, of course, bound by any such statute passed by a state. We therefore hold that the defendant was not prejudiced by failure of the prosecution to utilize any of the above set forth statutes in order to secure defendant a speedy trial.

*2. If not, was the defendant otherwise deprived of his constitutional right to a speedy trial by reason of the prosecution's lack of diligence so that his conviction should be dismissed?*

Defendant here contends that even without the utilization of the statutes set forth in the previous issue, the efforts of the prosecutor to obtain defendant's return to Michigan were not sufficiently diligent and defendant was thereby deprived of his right to a speedy trial.

In our opinion the actions of the prosecutor set forth in the facts indicate sufficient diligence on the part of the prosecutor to obtain the presence of defendant in the State of Michigan. See *People v Ferrazza,* 18 Mich 680 (1969). The only failing that might be attached to the prosecutor is that he was at times motivated by monetary considerations in transporting the defendant. However, under the circumstances, it is our opinion that considering the difficulty and cost of obtaining the custody of the defendant, due diligence was exercised by the prosecution.

*3. Did the court err in denying defendant's motion to suppress the identification testimony of*

*witness Henry Conklin because the identification procedures used by the police were impermissibly suggestive resulting in a substantial likelihood of misidentification?*

At the motion hearing and at trial, it was established that night watchman Henry Conklin was taken to a lineup of five persons on November 3, 1969, but was unable to identify any of them. On November 13, 1969, detective Clarence Taylor took two photographs to the home of witness Conklin at which time he identified a photograph of defendant as one of the men who assaulted him. After defendant was returned to Michigan, another lineup was held and Conklin again positively identified defendant as one of the assailants.

Defendant first contends that he was denied due process because his counsel was not present at the time the pictures were shown to witness Conklin. We disagree. In *People v John Martin,* 37 Mich App 621, 628 (1972), the Court stated:

"Defendant was identified during the 'investigatory stage' where no right to counsel exists. The right does not attach until the 'accusatory stage.' "

We therefore hold that since the pictures were shown to Conklin during the "investigatory stage", defendant was not deprived of his right to counsel.

Defendant also contends, however, that the identification procedure was so impermissibly suggestive as to deny defendant due process of law. In *People v Martin, supra,* the Court stated, pp 628–629:

"Defendant argues the out-of-court photo identification was unduly suggestive. The test for setting aside a photographic identification is found in *Simmons v United States, supra* [390 US 377, 384; 88 S Ct 967, 971; 19 L Ed 2d 1247, 1253 (1968)]:

" ' * * * [W]e hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'

"Assuming, but not deciding, that the identification procedures used in this case were suggestive, an in-court identification is not thereby tainted if there is an independent basis of identification. *United States v Wade, supra* [388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967)]; *People v Hutton* (1970), 21 Mich App 312; *People v Anderson* (1971), 29 Mich App 578. The test for determining whether the in-court identification has an independent basis is found in *Wong Sun v United States* (1963), 371 US 471, 488 (83 S Ct 407, 417, 9 L Ed 2d 441, 455):

" '[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'

"See *People v Childers* (1969), 20 Mich App 639, 647."

In the instant case the witness positively identified defendant at the lineup. He was not again shown any pictures after he made the original identification. In our opinion the identification at the lineup is sufficient to afford the subsequent in-court identification an independent basis. Therefore, even assuming that the original identification was suggestive, the in-court identification was not thereby tainted. *United States v Wade, supra.*

*4. Was the defendant twice put in jeopardy for the same offense because he was convicted of assault with intent to rob and steal while armed and for attempted safe burglary at the same trial and for activities arising out of the same events and at the same location?*

The statutes under which defendant was convicted are as follows. MCLA 750.531; MSA 28.799 provides:

"Bank, safe and vault robbery—Any person who, with intent to commit the crime of larceny, or any felony, shall confine, maim, injure or wound, or attempt, or threaten to confine, kill, maim, injure, or wound, or shall put in fear any person for the purpose of stealing from any building, bank, safe or other depository of money, bonds, or other valuables, or shall by intimidation, fear or threats compel, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables, or shall attempt to break, burn, blow up or otherwise injure or destroy any safe, vault or other depository of money, bonds or other valuables in any building or place, shall, whether he succeeds or fails in the perpetration of such larceny or felony, be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years."

MCLA 750.89; MSA 28.284 provides:

"Assault with intent to rob and steal being armed— Any person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years."

It is defendant's position that only one crime was committed, either assault with intent to rob or attempted safe robbery. We agree. Defendant assaulted the watchman for the sole purpose of robbing the safe. There was no evidence that he also attempted to rob the watchman's person. Therefore, since defendant's actions constituted only one transaction, and since those actions are

defined as a crime under MCLA 750.531; MSA 28.799, defendant should have been charged with only one crime.

Defendant's conviction for assault with the intent to rob and steal while armed is reversed.

Defendant's conviction for attempted safe robbery is affirmed.

All concurred.