PEOPLE v RODRIGUEZ

1. CRIMINAL LAW—SPEEDY TRIAL—DELAY—EXTRADITION.

A defendant was denied his constitutional right to a speedy trial
where Michigan authorities knew for five years and seven
months that he was incarcerated in California following a
conviction there and made no effort to extradite him (US Const,
Am VI; Const 1963, art 1, § 20).

2. CRIMINAL LAW—SPEEDY TRIAL—DEMAND—INTERSTATE AGREEMENT
ON DETAINERS.

A defendant's failure to make a demand to be returned to
Michigan for trial on a robbery charge after being incarcerated
in California for a crime committed there did not constitute a
waiver of his right to a speedy trial despite the provisions of
the interstate agreement on detainers, because the interstate
agreement is not the sole codification of an accused's right to a
speedy trial when he is imprisoned on another charge in a
foreign jurisdiction (MCLA 780.601).

3. CRIMINAL LAW—SPEEDY TRIAL.

The factors to be balanced in making the determination whether
a defendant's right to a speedy trial has been violated are (1)
length of delay; (2) reason for the delay; (3) defendant's asser-
tion of his right, which should be weighed, but the absence of
which is not conclusive; and (4) prejudice to the defendant.

4. CRIMINAL LAW—SPEEDY TRIAL—PREJUDICE.

A defendant was prejudiced by a failure to bring him to speedy
trial where Michigan authorities knew for five years and seven
months that he was incarcerated in California and failed to
make an effort to extradite him and where by reason of the
delay defendant lost the opportunity to investigate for potential
witnesses to the offense other than those named by the state,
airline records which might have verified the date of defend-
ant's flight to California made allegedly before the date of the
crime were destroyed, and pharmacy records of the processing

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 21 Am Jur 2d, Criminal Law § 250.
[3] 21 Am Jur 2d, Criminal Law § 241 *et seq.*

of a certain photo slide showing defendant's presence in California at the time of commission of the alleged crime no longer exist; such evidence could have been instrumental in proving his innocence.

Appeal from Wayne, Edward F. Bell, J. Submitted Division 1 April 3, 1973, at Detroit. (Docket No. 14731.) Decided May 24, 1973.

Richard E. Rodriguez was convicted of armed robbery. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Kenneth M. Mogill,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and DANHOF and BASHARA, JJ.

DANHOF, J. Defendant was convicted in a non-jury trial of robbery armed, MCLA 750.529; MSA 28.797, on April 19, 1972 and sentenced to a prison term of 7-1/2 to 15 years. We reverse and set aside the conviction because we find that defendant was denied his constitutional right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20.

On November 29, 1965, at about 7:50 p. m., Great Scott Supermarket assistant manager, Ronald Gibson, was robbed of $5,025.75 as he was working in his store. On December 30, 1965, Gibson identified a photograph of the defendant as the man he believed had robbed him. The officer in charge of the case, Detective Sergeant Dale Johnson, believed that the defendant was in Michigan at about this time and that he could have been

arrested if a warrant had been obtained. An arrest warrant was not sought and obtained, however, until February 24, 1966. Defendant was not arrested until January 7, 1972.

On March 16, 1966, a letter from the Redford Township Police Department to Los Angeles, California, County Sheriff's Department, placed a "hold" on defendant, who at that time was there in custody on another pending charge. On June 8, 1966, defendant was sentenced on an indeterminate sentence to the custody of the California Adult Authority, having been convicted of possession of narcotics in that state. Defendant remained in custody in California until January 7, 1972, when he was paroled to the "hold" in this case.

At no time did any police or prosecutorial official in Michigan take any steps to secure the presence of defendant in Michigan prior to his release by California. The record does contain rather extensive correspondence between Sergeant Johnson and California authorities in which these authorities were advised of an interest in extraditing the defendant. However, no formal extradition was ever attempted.

Defendant has had only a ninth grade education. When informed by California authorities of the Michigan hold, he did not make a written demand for speedy trial. He contacted his sister, Gloria Geml, who in turn contacted a friend, Edward English, who lives in Michigan. English claimed that in 1969 he contacted Sergeant Johnson and asked if these charges could be dropped, or in the alternative that defendant be returned to Michigan to stand trial as soon as possible. Sergeant Johnson admitted speaking to English about the defendant, but denied that English ever demanded that defendant be brought back to stand trial.

Sergeant Johnson testified that English asked him "If I intended to bring Mr. Rodiguez back to the State of Michigan and prosecute him and my answer was yes, I did".

After his return to Michigan in January of 1972, defendant moved to dismiss this charge for lack of a speedy trial. After an extensive hearing, the motion was denied because defendant had never made an on-the-record demand for a speedy trial. *People v Foster,* 261 Mich 247 (1933). In *People v Collins,* 388 Mich 680, 693 (1972), our Supreme Court pointed out that the demand rule of *Foster* had been struck down in *People v Grimmett,* 388 Mich 590 (1972), and that, in any event, the appropriate test for determining the speedy trial issue is now the balancing approach of *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). In affirming the defendant's conviction in *Collins,* the Court was confronted with a 15-month delay as opposed to the delay of approximately 6-1/2 years in the case at bar.

At trial, the sole evidence against defendant consisted of the uncorroborated identification testimony of Mr. Gibson. It should be noted that Gibson, prior to the photographic identification of defendant, had initially described his assailant as 6 feet 1 inch, 160 pounds, dark complected, and white. Defendant is 5 feet 8 inches and is of Mexican descent.

Defendant took the stand in his own behalf and testified that at the time of the robbery he was in San Fernando, California. He had been doing construction work in the Detroit area in the fall of 1965 until work dropped off around the first of November. He then decided to go back to California and visit with his sister, Gloria, and her family. He testified that he flew to Los Angeles around

November 19, and remained in California with his family and friends for the next month. Defendant's counsel contacted United and American Airlines in an attempt to document this claim, but was informed that flight passenger lists are not kept that far back.

Defendant's sister also testified for the defense. She recalled the date of her brother's arrival as November 22 or 23, and testified that she saw him every day thereafter for approximately one month. She produced a picture of defendant and another brother said to be taken by her with a Polaroid camera as they sat eating Thanksgiving dinner on November 25, 1965. A slide of defendant and his brother said to be taken on November 27, 1965 as they stood in front of their mother's home was also produced. Both pictures were admitted into evidence. Defendant's sister testified that an effort was made to verify the date of the slide, but that she was told by the pharmacy where the slide had been developed that records were not kept that far back. She testified that on the date of the crime, Monday, November 29, 1965, defendant ate dinner and played cards with her and her husband.

In setting aside defendant's conviction, we do not pass upon the issue of whether the delay of approximately 55 days between the positive photographic identification of defendant and the date of the issuance of the warrant for his arrest was sufficiently prejudicial to justify a reversal. We are concerned with the uncontroverted fact that, for the period of five years and seven months following defendant's sentencing in California, authorities in Michigan knew of defendant's whereabouts and made no effort to extradite. Of course, had Michigan authorities not known of defendant's incarceration in California, a different situation

would have been presented. Both Michigan and California adopted the Uniform Criminal Extradition Act in 1937. MCLA 780.1 *et seq.;* MSA 28.1285(1) *et seq.,* West's Annotated California Penal Code §§ 1548–1556.2. We are aware that extradition proceedings to bring back a person held in another state are not assured of success. If the state makes a reasonably timely effort to extradite an out-of-state prisoner and is unsuccessful, then the state has done what it can. However, where no effort is made, as in this case, the requirements of the law have not been met. For a case with similar facts and like holding, see *People v Winfrey,* 20 NY 2d 138; 281 NYS2d 823; 228 NE2d 808 (1967).

The people argue that under the interstate agreement on detainers, MCLA 780.601; MSA 4.147(1), defendant could have and failed to make a demand to be returned to Michigan for trial. It appears that California is also a party to the interstate agreement. West's Annotated California Penal Code §§ 1389–1389.7. However, we do not perceive the interstate agreement as being the sole codification of an accused's rights to a speedy trial when he is imprisoned on another charge in a foreign jurisdiction. In *Barker v Wingo, supra,* the Supreme Court enunciated the test by which we are to determine whether a defendant's rights to a speedy trial have been violated. The factors to be balanced in making the determinations are: (1) length of delay; (2) reason for the delay; (3) defendant's assertion of his right, which should be weighed, but the absence of which is not conclusive; and (4) prejudice to the defendant. 407 US 514, 530. The first three factors have already been discussed. As for the last, even if the lengthy delay in the instant case is not presumptively prejudi-

cial, defendant has made a convincing demonstration of prejudice. By reason of the delay, defendant lost the opportunity to investigate for potential witnesses to the offense other than those named by the state. At the time of the robbery there were about 35 customers in the store and about 4 cashiers on duty. No attempt was made by the police to locate any of these potential witnesses. The airline records which might have verified the date of defendant's flight to California have been destroyed. The pharmacy records which might verify the date of processing of the slide taken of defendant in front of his mother's house in San Fernando, California no longer exist. Needless to say, this evidence, forever lost, could have been as instrumental in convicting the defendant of the charge herein brought as of proving his innocence. On this, we are powerless to speculate and can do ought but reverse.

Reversed and conviction set aside.

All concurred.