EDMOND v DEPARTMENT OF CORRECTIONS

1. MANDAMUS—CRIMINAL LAW—DETAINER—INTERSTATE AGREEMENT
   ON DETAINERS—SPEEDY TRIAL—STATUTES.

   The Court of Appeals will ·not issue a writ of mandamus striking
   from a plaintiff's prison record a Florida detainer based on
   criminal charges now pending in Florida where (1) Florida is a
   party, along with Michigan, to the Interstate Agreement on
   Detainers, (2) the plaintiff refused all offers of forms and
   assistance he needed to assert his rights under the agreement,
   and (3) public policy favoring a speedy trial is not being
   violated because Florida has requested immediate custody of
   the defendant, and any constitutional speedy trial arguments
   should be presented to the Florida or Federal courts (MCLA
   780.601 *et seq.;* MSA 4.147[1] *et seq.).*

2. CRIMINAL LAW—DETAINER—INTERSTATE AGREEMENT ON DETAINERS
   —NOTICE PROVISIONS—SUBSTANTIAL COMPLIANCE—STATUTES.

   A plaintiff prisoner who was informed that another state, which
   is a party along with Michigan to the Interstate Agreement on
   Detainers, had lodged a detainer against him did not suffi-
   ciently comply with the rather specific notice requirements of
   the agreement to qualify under a substantial compliance stan-
   dard for that agreement where the plaintiff refused all opportu-
   nities to invoke his rights under the notice provisions of the
   agreement.

3. CRIMINAL LAW—DETAINER—INTERSTATE AGREEMENT ON DETAINERS
   —DISMISSAL OF CHARGES—NOTICE PROVISIONS—STATUTES.

   The Interstate Agreement on Detainers provides that all charges
   in a detainer lodged against a prisoner must be dismissed if the
   prisoner is not brought to trial, by the state lodging the
   detainer, within 180 days after the prisoner invokes his rights
   under the notice provisions of the agreement by notifying the
   detaining state according to the notice requirements as explic-
   itly defined by the agreement; however, it would not be appro-
   priate to give the prisoner the benefits of the agreement where

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 21 Am Jur 2d, Criminal Law § 250.

52 Am Jur 2d, Mandamus § 373.

he was informed of his rights and responsibilities under the agreement, but did not follow the requirements of the interstate agreement and instead chose to pursue other remedies (MCLA 780.601 *et seq.;* MSA 4.147[1] *et seq.*).

Original action in the Court of Appeals. Submitted June 17, 1977, at Lansing. (Docket No. 31035.) Decided September 8, 1977. Leave to appeal dismissed, 401 Mich 839.

Complaint by Thomas Edmond in the Court of Appeals against the Michigan Department of Corrections for mandamus directing the defendant to strike from the plaintiff's prison records a detainer based on criminal charges pending in Florida. Mandamus denied.

*Kenneth A. Birch,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas L. Casey,* Assistant Attorney General, for defendant.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and D. F. FREEMAN,* JJ.

ALLEN, J. This is an original mandamus action in the Court of Appeals brought by an inmate of the state prison at Jackson. GCR 1963, 714.1(1). He seeks a writ of mandamus directing defendant Michigan Department of Corrections to strike from his prison records a detainer based on criminal charges now pending in Florida.[1]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The presence of an active detainer affects a prisoner's status with regard to degree of confinement, eligibility for trustee status and eligibility for parole. This is the condition which the plaintiff hopes to change by having the detainer stricken from the prison records. Even if this Court grants the requested relief, the plaintiff would still be subject to traditional extradition procedures and trial in Florida. *Gayles v Hedman,* — Minn —; 244 NW2d 154 (1976), *Baker v Schubin,* 72 Misc 2d 413; 339 NYS2d 360 (1972).

Both Michigan and Florida are parties to the "Interstate Agreement on Detainers" (the Agreement). MCLA 780.601 *et seq.;* MSA 4.147(1) *et seq.;* FSA 941.45 *et seq.* The Agreement provides procedures whereby officials in State A can obtain temporary custody of a prisoner serving a sentence in State B for purposes of trying him on pending charges in State A. It also allows the prisoner serving his sentence in State B to force the officials in State A to either try him within 180 days or dismiss the charges. The dispute in the present case focuses on the latter procedure, the details of which are set forth in Article III of the Agreement. MCLA 780.601; MSA 4.147(1).

The plaintiff is wanted in Florida to face charges arising out of a 1974 incident in which he shot and wounded his common-law wife. He is presently serving a 4–15 year prison term in Michigan based on an October 1975, manslaughter conviction in Detroit Recorder's Court.[2]

The attorney who represented the plaintiff in the Recorder's Court proceedings also contacted the Florida authorities regarding those pending charges. Florida then filed a detainer with the Michigan prison officials in order to alert them to the fact that the plaintiff was wanted in Florida. An official of the prison at Jackson told the plaintiff on November 7, 1975, that the Florida detainer had been filed and gave him the forms he would need to assert his rights under Article III of the Agreement. The plaintiff refused to complete the forms. He states in his brief that he did so because of the negotiations then continuing between his attorney and the Florida authorities.[3]

---

[2] The record does not disclose whether the Michigan killing occurred before or after the Florida incident.

[3] It may be significant that, had those negotiations succeeded, plaintiff would have won an outright dismissal of the Florida charges.

On February 26, 1976, an assistant prosecutor in Florida wrote that he had determined that the Florida charges could not be successfully prosecuted and would be dismissed. The plaintiff's attorney wrote back requesting confirmation of the dismissal. In July of 1976, a letter was received stating that a supervising attorney in the Florida prosecutor's office had overruled the original recommendation to dismiss the charges. The plaintiff's Michigan attorney then filed in the Florida court a motion to dismiss or—in the alternative—a motion for a speedy trial. The plaintiff simultaneously filed an *in pro per* motion to dismiss, but he did not request a speedy trial. No word of a decision on either motion has ever been received by the plaintiff.

In a letter to the Florida court purportedly sent on August 26, 1976, the plaintiff asked the court to use the Agreement to bring him back to Florida for trial. The letter was sent by certified mail but was never read by anyone in Florida because the receipt of the letter was refused by an official of the Florida court.[4]

The plaintiff filed his complaint for mandamus in this Court on November 15, 1976. This Court then entered its order enjoining further action on the detainer until we could consider the merits of the plaintiff's complaint.

Article I of the Agreement states the policy considerations which have led various states to adopt it.

"The party states find that charges outstanding

---

On the other hand, had the defendant asserted his rights under Article III of the Agreement he would have been asking for a trial on the Florida charges and waiving his right to contest extradition.

[4] The defendant's brief suggests that the plaintiff manufactured this letter in order to buttress his case. We accept the letter at face value.

against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and purpose of this agreement to encourage the expeditious and orderly disposition of such charges." MCLA 780.601; MSA 4.147(1).

The plaintiff argues that the policy expressed in the Agreement and our constitutional speedy trial guarantees require that we order the defendant to strike the Florida detainer from its records. He principally relies upon *Rainey v Department of Corrections,* 41 Mich App 313; 199 NW2d 829 (1972).[5] Except for the fact that the other state involved in *Rainey* (Louisiana) was not a party to the Agreement, we concede that the facts in that case are very similar to those in the present case. Like the plaintiff, Rainey was an inmate of the prison at Jackson who faced charges in another state. He failed to comply with the requirements of Article III of the Agreement, but he did communicate with Louisiana authorities and mentioned "that he was aware of his Federal Constitutional right to a speedy trial". 41 Mich App at 315. This Court ordered that the detainer in *Rainey* should be stricken because our public policy favoring speedy trials would be violated if Rainey suffered any disabilities because of the pending detainer.

[5] Several other Michigan cases have interpreted Michigan's version of the Agreement. *See People v Daniels,* 69 Mich App 345; 244 NW2d 472 (1976), *Buchanan v Department of Corrections,* 50 Mich App 1; 212 NW2d 745 (1973), *People v Rodriquez,* 47 Mich App 483; 209 NW2d 441 (1973), *People v Fossey,* 41 Mich App 174; 199 NW2d 849 (1972), and *People v Stroble,* 31 Mich App 94; 187 NW2d 474 (1971). *See also Stroble v Egeler,* 408 F Supp 630 (ED Mich, 1976), which reflects subsequent developments in *People v Stroble, supra.* None of these decisions addresses the questions raised by the present case.

In *Rainey,* there was a prospect of further indefinite delay in Louisiana. That is not a factor in the present case since Florida has requested immediate custody of the defendant. His constitutional speedy trial arguments should be presented to the Florida or Federal courts. On these facts, it would not be appropriate for us to use the *Rainey* technique of enforcing a "policy" where it cannot be said with certainty that the constitutional guarantee has been violated. In addition to our reluctance to interfere with the criminal jurisdiction of another state, we are also influenced by two critical factual distinctions between this case and *Rainey.* First, Florida, unlike Louisiana, is a party to the Agreement. We believe that the spirit of the Agreement requires that we defer to the judgment of another party state even though we might not extend similar consideration to a nonparty jurisdiction. Secondly, this plaintiff refused all offers of the forms and assistance he needed to assert his rights under Article III of the Agreement.

For the reasons previously stated, we decline to strike the Florida detainer on purely public policy grounds. Assuming rejection of his policy arguments, plaintiff also argues that he substantially complied with the requirements of Article III and that substantial compliance is sufficient. We reject this argument for the reasons outlined below.

Article III provides that charges against the prisoner must be dismissed if he is not brought to trial on those charges within 180 days after service of "notice" on the trial court and the prosecutor in the other state. The "notice" required is explicitly defined by Article III. Upon being informed that a detainer has been lodged against him—as the plaintiff was informed in this case—a prisoner must prepare a written notice of his place

of imprisonment and a request that a final disposition of the pending charges be made. The prisoner is required to give those documents to his warden. The warden must then forward the documents along with further details of the prisoner's confinement and an offer to surrender temporary custody to the appropriate officials in the other state. A prisoner will not be penalized if the prison officials fail to carry out their duties under the Agreement. *People v Esposito,* 37 Misc 2d 386; 201 NYS2d 83; 238 NYS2d 460 (1960).

The plaintiff refused all opportunities to invoke his rights under Article III in the prescribed manner. Having failed to do so, he nonetheless argues that his various letters to Florida courts and prosecutors and his motions filed in that state amounted to substantial compliance with the requirements of Article III.

Language[6] from *Rainey v Department of Corrections, supra,* suggests a substantial compliance analysis. However, that statement was unnecessary dictum and was made in a case where the state requesting custody was not a party to the Agreement.

*Franks v Johnson,* 401 F Supp 669 (ED Mich, 1975), is the only case which has directly held that substantial compliance is sufficient to satisfy the Article III requirements under Michigan's version of the Agreement. In that case, the prisoner wrote a letter to a New Jersey prosecutor in which he specifically invoked his rights under Article III(a) of the Agreement. The *Franks* court found substantial compliance and sufficient compliance even though the prisoner had not transmitted that

---

[6] "We hold that the plaintiff's letter to the Louisiana district attorney, requesting a bill of particulars and referring to the Federal Constitutional right to a speedy trial, was sufficient." 41 Mich App at 317.

request through his warden and had given notice only to the prosecutor—not to the trial court—of the other state.

The final case worthy of note is *People v Butcher,* 46 Mich App 40; 207 NW2d 430 (1973), wherein the Court assumed the applicability of the Agreement and held that an oral request for a speedy trial made at a preliminary hearing was not sufficient to satisfy the "rather specific notice requirements" of Article III. 46 Mich App at 44.

We concede the possibility that something less than perfect compliance might be sufficient in some cases. However, we hold that the plaintiff did not sufficiently comply with the requirements of Article III in the present case to qualify under a substantial compliance standard.

The Agreement provides that all charges must be dismissed if a prisoner is not brought to trial within 180 days after he invokes his rights under Article III. Since this provision places an additional burden on the prosecuting authorities, it is fair to insist that the prisoner satisfy the preliminary requirements. *Baker v Schubin,* 72 Misc 2d 413; 339 NYS2d 360 (1972). In order to insure that all parties concerned have a fair opportunity to protect their rights, the Agreement requires that a prisoner be informed of his rights under the Agreement and that he inform both the prosecuting attorney and the trial court of his whereabouts and his invocation of Article III procedures.

Except for the July, 1976, letter which was returned unopened, the plaintiff never mentioned the Agreement in his communications with the Florida authorities. The only occasion on which he requested a trial was the motion filed by his Detroit attorney in July of 1976, which requested a speedy trial if the motion to dismiss was denied.

Despite these deficiencies, we would be sympathetic to the plaintiff's substantial compliance argument were it not for his November 7, 1975, refusal to properly comply with Article III when offered the opportunity to do so by the prison officials. Even if we accept his argument that the initial refusal was motivated by his knowledge that his attorney was negotiating with the Florida authorities, that explanation does not justify his failure to forward the documents to his attorney or to complete the documents once the negotiations broke down. The Florida authorities never were warned that they faced the shortened deadline imposed by Article III of the Agreement. The plaintiff was aware of his rights and responsibilities under the Agreement but chose to pursue other remedies. On these facts, it would not be appropriate to give him the benefits of the Agreement when he avoided its responsibilities.

The request for a writ of mandamus is denied, and the temporary injunction is lifted.