PEOPLE v GALLEGO

Docket No. 132272. Submitted February 10, 1993, at Lansing. Decided
     May 4, 1993, at 9:15 A.M.

     Luis F. Gallego was charged in the Oakland Circuit Court with
     conspiracy to deliver more than 650 grams of cocaine and
     delivery of between 225 and 650 grams of cocaine. The court,
     David F. Breck, J., dismissed the charges, ruling that Article III
     of the Interstate Agreement on Detainers, MCL 780.601; MSA
     4.147(1), was violated because the defendant, who at that time
     was an inmate in a federal prison, was not brought to trial
     within 180 days of the prosecutor's receipt of a letter from the
     defendant's attorney advising of defendant's confinement in
     federal prison and requesting a disposition of the charges. The
     court also ruled that there had been no violation of Article IV
     of the IAD, which requires that trial commence within 120 days
     of a detainee's arrival in the receiving state. The prosecution
     appealed.

     The Court of Appeals held:

     1. The letter from the defendant's attorney to the prosecutor
     did not comply substantially with the requirements of Article
     III. A copy of the letter was not sent to the trial court, and the
     letter was not accompanied by a certificate from federal prison
     authorities stating the term of commitment, the time served,
     the time remaining to be served, the amount of good time
     earned, and the time of parole eligibility.

     2. A detainer, which is a written notice filed with the institu-
     tion in which a prisoner is serving a sentence advising that the
     prisoner is wanted for pending charges in the notifying state,
     must be filed before the prisoner can invoke the provisions of
     the IAD. In this case, no detainer was filed before the defen-
     dant's attorney sent the letter to the prosecutor, and the
     subsequent detainer filed by the prosecutor was not followed by
     an invocation of rights under the IAD by the defendant.

     3. The defendant's claim that the trial court erred in not

REFERENCES

Am Jur 2d, Criminal Law §§ 658, 662.
Validity, construction and application of Interstate Agreement on
     Detainers. 98 ALR3d 160.

finding a violation of Article IV was not raised by way of cross appeal, and the record supports the trial court's ruling.
Reversed.

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — NOTICE.

   A prisoner may not invoke the Interstate Agreement on Detainers for a speedy trial on an indictment, information, or complaint in another state without having complied substantially with the notification requirements of the agreement; the prisoner must provide the prosecutor and the court with written notice of the place of imprisonment and a request for a final disposition of the indictment, information, or complaint, and the notice must be accompanied by a certificate from the prison stating the term of commitment, the time served, the time remaining to be served, the amount of good time earned, and the time of parole eligibility (MCL 780.601; MSA 4.147[1]).

2. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — DETAINERS.

   A detainer, for purposes of the Interstate Agreement on Detainers, consists of written notification filed with the institution in which a prisoner is serving a sentence advising that the prisoner is wanted to face pending charges in the notifying state (MCL 780.601; MSA 4.147[1]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Ribitwer & Sabbota* (by *Mitchell Ribitwer*), for the defendant on appeal.

Before: MACKENZIE, P.J., and HOOD and WHITE, JJ.

PER CURIAM. The people appeal as of right from an order of the circuit court dismissing charges against defendant for failure of the people to comply with the 180-day provision of the Interstate Agreement on Detainers (IAD), MCL 780.601;

MSA 4.147(1), which provides that a prisoner subject to a detainer must be tried within 180 days after serving notice of his place of imprisonment and a request for final disposition of the charges.

On November 20, 1986, defendant was charged in Oakland County with conspiracy to deliver more than 650 grams of cocaine, MCL 333.7401(2) (a)(i); MSA 14.15(7401) (2)(a)(i), and delivery of between 225 and 650 grams of cocaine, MCL 333.7401(2)(a)(ii); MSA 14.15(7401)(2)(a)(ii). On November 21, 1986, defendant was indicted on federal charges of conspiracy to deliver cocaine and delivery of cocaine. Defendant pleaded guilty of the federal offenses and was sentenced to federal prison on July 21, 1987. Defendant was taken into federal custody on November 23, 1987, and imprisoned in Tallahassee, Florida.

On November 27, 1987, the Federal Bureau of Prisons sent a form "detainer action letter" to the Oakland County Sheriff's Department that stated:

> This office is in receipt of the following report regarding the above named [Gallego]: 12-15-86: Consp to deliver over 650 grams of cocaine. Will you please investigate this report and advise what disposition, if any, has been made of the case. If subject is wanted by your department and you wish a detainer placed, it will be necessary for you to forward a certified copy of your warrant to us along with a cover letter stating your desire to have it lodged as a detainer, or indicate you have no further interest in subject.

Defendant was apparently sent a copy of this letter. He then contacted his Michigan attorney.

On December 3, 1987, defendant's attorney wrote a letter to the Oakland County Prosecutor's office, stating in part:

> Since this case has been pending since late

November of 1986, I would like to get Luis back and he has requested that he be brought back to the State of Michigan immediately to face the pending charges here in the state. At this point in time, not only do we have a speedy trial violation in my opinion, but now it⌃ is my understanding that we must comply with the Interstate Agreement on Detainers Act in order to bring Luis back. Luis is concerned and he has requested that I make immediate demand in his behalf for disposition on this case. Since there has already been so many delays on this case, I would hate to have this case affect Luis' incarceration in Tallahassee as he received a short enough sentence by the federal court that I believe that he may be released much earlier than the December 23, 1988 discharge date. Please remember that Luis is on a personal bond here in the State of Michigan and to have him spend extra time in the State of Florida on the federal case as a result of this untried charge would be unfair since he is not now housed as a result of our case here in Michigan.

While it is unlikely that our preliminary exam will go forward on December 10, 1987, I would like to set a date as quickly as possible on which Luis should be brought back to the State of Michigan. On December 10, 1987, I will place all of these items on the record.

On March 11, 1988,[1] the Oakland County Prosecutor's office filed a detainer with the federal authorities in Tallahassee. On April 21, 1988, the federal authorities notified defendant of the untried charges and his right to request a final disposition under the IAD. On May 10, the Oakland County Prosecutor sent a "Request for Temporary Custody." On May 25, the federal authorities sent a "Certificate of Inmate Status and Offer to Deliver Temporary Custody" to the Oakland County

---

[1] There is no dated detainer document in the file. The March 11 date was set forth by defense counsel in argument on the motion to dismiss, and that date is indicated in the trial court's opinion.

Prosecutor. Also on May 25, defendant refused to waive the statutory thirty-day waiting period because he was unable to consult with counsel. On June 8, 1988, defendant filed a petition in Florida, objecting to the detainer and the request for temporary custody on the ground that the 180-day provision of the IAD had been violated.

On July 7, 1988, defendant was returned to Michigan pursuant to the IAD request. A preliminary examination was held on August 19 and 25, 1988, after several adjournments, including one that was based on defense counsel's health. Defendant was bound over to circuit court. The arraignment on the information was done by mail, and a pretrial conference was set for September 29, 1988.

Defense counsel informed the court that she wished to file several motions, including a motion to dismiss for failure to comply with the IAD. The pretrial order gave defendant until October 7, 1988, to file pretrial motions, which were set to be heard on November 9, 1988. Defendant failed to file a motion to dismiss at that time. On November 30, the prosecutor moved to disqualify Judge David F. Breck, the judge to whom the case was assigned. Defendant objected. On December 16, the motion to disqualify was granted. On December 20, the case was reassigned to Judge Gene Schnelz, although the order was not filed until January 20, 1989. Trial was scheduled for April 3, 1989. On March 31, trial was adjourned, apparently with defendant's consent. On June 16, 1989, an order stating the following was entered:

> At defense request, trial of this case is adjourned and the matter is stayed until further order of the court. This stay is effective from the time of Chief Judge [Robert C.] Anderson's decision disqualifying Judge Breck on December 16, 1988, until such

time as the Michigan Court of Appeals rules on the disqualification issue in similar cases.

On January 5, 1990, this Court resolved the issue and reversed the order disqualifying Judge Breck from hearing the case. Trial was set for February 6, 1990. The February 6 date was adjourned to March 26 at defendant's request because of his counsel's absence from the state. The March 26 date was adjourned on the basis of defendant's request for new counsel because his counsel was moving out of state. Trial was again adjourned on May 7 to allow defense counsel additional time to file motions.

On May 30, 1990, defendant filed a motion to quash the information for denial of his right to a speedy trial and a motion to dismiss for violation of the IAD. The motion was heard on June 29, 1990. The court filed a written opinion on July 29, 1990. The court ruled that the letter written by defendant's attorney to the prosecutor's office on December 3, 1987 satisfied the notice requirements of Article III of the IAD and that, because defendant was not tried within 180 days of receipt of that notice, the case "must be dismissed." The court also ruled that Article IV of the IAD, which provides that a defendant must be tried within 120 days of arrival in the requesting state, was not violated and that defendant's right to a speedy trial was not violated.

The prosecutor now appeals, arguing that the letter sent by defendant's counsel did not satisfy the notice requirements of the IAD. We agree.

Article III of the IAD provides in pertinent part:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the

continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint *on the basis of which a detainer has been lodged* against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. *The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner,* stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested. [Emphasis added.]

Under Article III of the IAD, a prisoner, upon being advised that a detainer has been lodged against the prisoner, must prepare a written notice of the place of imprisonment and a request that a final disposition of the pending charges be made. The prisoner is required to give those documents to the warden. The warden must then forward the documents along with further informa-

tion regarding the prisoner's confinement and an offer to surrender temporary custody to the appropriate officials in the other state. *People v Marshall,* 170 Mich App 269, 276; 428 NW2d 39 (1988).

In *People v Wimbley,* 108 Mich App 527, 532; 310 NW2d 449 (1981), this Court held that the notice requirements of the IAD must be complied with strictly. Letters sent to the defendant's wife and a copy of the letter sent by the defendant's Ohio attorney forwarded to the prosecutor's office did not satisfy the notice requirements because informal letters do not comply with the IAD.

In *Edmond v Dep't of Corrections,* 78 Mich App 196, 203; 259 NW2d 423 (1977), this Court held that the defendant's letters to Florida courts and prosecutors and his motions filed in that state did not amount to substantial compliance with the notice requirements of Article III of the IAD. The *Edmond* Court did, however, "concede the possibility that something less than perfect compliance might be sufficient in some cases." *Id.* at 203.

In the instant case, the trial court ruled that defense counsel's letter of December 3, 1987, constituted sufficient notice under the IAD. However, the letter did not substantially comply with the IAD. First, there is no indication that the notice and request were sent to the court and the prosecutor. Second, the request was not accompanied by a certificate of the official having custody of defendant stating the term of commitment, the time served, the time remaining to be served, the amount of good time earned, and the time of parole eligibility. The attorney's letter simply stated that it was her understanding that defendant's release date was on or about December 23, 1988. The November 27, 1987, form letter from the federal facility in Tallahassee provided none of the required information. This information was not

provided until May 25, 1988, apparently in response to the Oakland County Prosecutor's request for custody, and not in response to any notice and demand filed by defendant. Additionally, while the letter mentioned the IAD, it did not clearly inform the prosecutor that defendant was invoking his rights under Article III.

Lastly, the IAD applies where there is pending "any untried indictment, information or complaint on the basis of which a detainer has been lodged." A detainer must be lodged against a defendant for the IAD to apply. *People v Shue*, 145 Mich App 64, 69; 377 NW2d 839 (1985). *People v Barnes*, 93 Mich App 509; 287 NW2d 282 (1979). While there is no exact definition of the term "detainer," it has generally been recognized to mean written notification filed with the institution in which a prisoner is serving a sentence advising that the prisoner is wanted to face pending charges in the notifying state. A hold placed in the Law Enforcement Information Network (LIEN) system that is not acknowledged by the sender or recipient as a detainer is insufficient to activate the IAD. *Shue, supra* at 70. Once a detainer is filed, it is then that the IAD is triggered and compliance with the provisions of the agreement is required. *People v Bentley*, 121 Mich App 36, 41; 328 NW2d 389 (1982). While it is unclear how the federal authorities became aware of the Michigan charge in November 1989, there is no indication that either the Michigan or the federal authorities regarded that information as constituting a detainer. In fact, the Bureau of Prisons' November 27 form letter and the prosecutor's later-filed detainer indicate otherwise.

The Oakland County Prosecutor's office did not file a detainer until March 11, 1988. A certificate of inmate status and an order to deliver temporary

custody were subsequently dated May 25, 1988. Thus, defendant's attorney's letter of December 3, 1987, was clearly sent to the prosecutor's office before the filing of the detainer and could not satisfy the notice requirements of the IAD because the IAD did not apply at that time.

There is no indication or claim that defendant ever requested a final disposition of the complaint after March 11, 1988. Further, on April 21, 1988, defendant was notified of the detainer and informed of his right to request a final disposition of the complaint in accordance with Article III(c) of the IAD. Because the IAD was not applicable until March 11, 1988, when the Oakland County Prosecutor's office lodged a detainer against defendant, and because defendant did not request a final disposition after March 11, 1988, Article III was never invoked. Accordingly, the trial court erred in granting defendant's motion to dismiss on the basis of the 180-day provision.

Defendant claims in the alternative that the trial court's ruling is still correct under Article IV(c) of the IAD, which requires that a prisoner be brought to trial within 120 days of arrival in the receiving state:

> In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

The trial court ruled that this provision had not been violated. Defendant did not file a cross appeal. In *People v Langley*, 187 Mich App 147, 151; 466 NW2d 724 (1991), this Court said, "An appel-

lee is limited to the issues raised by the appellant unless a cross appeal is filed. . . . MCR 7.207; *Bhama v Bhama,* 169 Mich 73, 83; 425 NW2d 733 (1988)." *Langley* is controlling under Administrative Order Nos. 1990-6, 436 Mich lxxxiv, and 1992-8, 441 Mich lii. But see *Fass v Highland Park (On Rehearing),* 321 Mich 156, 158; 32 NW2d 375 (1948); 7A Callaghan's Michigan Pleading & Practice (2d ed), § 57.54, p 334. In all events, given the chronology set forth above, we do not believe that the trial court's ruling regarding this issue was erroneous.

Reversed.