*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRENCE BERNARD KING,

        Defendant-Appellant.

UNPUBLISHED
December 11, 2025
9:58 AM

No. 372059
Macomb Circuit Court
LC No. 2024-000847-FC

Before: TREBILCOCK, P.J., and PATEL and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right from his June 13, 2024 jury-trial convictions of armed robbery, MCL 750.529; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during commission of a felony (felony-firearm), MCL 750.227b.[1] Defendant was sentenced to 15 to 40 years' imprisonment for the armed robbery conviction, one to five years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction.[2] We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case began when defendant robbed the victim at gunpoint on February 27, 2020. Before the robbery, the victim received a haircut from his barber, Casey Gage, who operated the business out of the basement of his home. While getting the haircut, the victim had a conversation with another patron and Donnie Johnson, who was Gage's friend and defendant's codefendant.

---

[1] Defendant was also charged with malicious destruction of property less than $200, MCL 750.377a(1)(d), but found not guilty at trial. On February 13, 2024, an amendment to the malicious destruction of property statute became effective and this offense was renumbered to MCL 750.377a(1)(e). 2023 PA 199.

[2] The felony-firearm sentence runs consecutive to the armed robbery sentence. MCL 750.227b(3).

-1-

Johnson left the house after the victim saw him retrieve a Glock from the basement's drop ceiling. The victim and the other patron left sometime later.

While walking to his car, the victim noticed defendant walking down the street, wearing dark clothing and red shoes. The victim entered his car, and defendant began walking toward it. As defendant walked by, he opened the driver-side door and pointed a Glock at the victim's face, demanding that the victim give him all the money he had. The victim initially refused, but then complied with defendant's demand. Defendant walked away, and the victim tried to reenter Gage's house. Gage's door was locked, and the victim returned to his car to chase defendant, but the car's rear tires were flat.[3] Notwithstanding the flat tires, the victim backed out of Gage's driveway and pursued defendant, but lost sight of him when defendant ran into a backyard.

The victim called the police, and the responding officers collected surveillance video from the local businesses in the area. One business's surveillance video depicted defendant going down the alley towards a liquor store. Surveillance videos from the liquor store, in turn, showed defendant making a call from that business's cordless phone before being picked up in a black or dark gray Dodge Ram pickup truck.

The police identified defendant from the surveillance videos, phone records, and photographs posted by defendant on social media.[4] The prosecution eventually issued a complaint and warrant for the charges noted. While defendant was charged on May 7, 2021, he was not arraigned until December 15, 2023. In the interim, defendant was arrested and convicted of violating 18 USC 922(g)(1) (possession of a firearm as a felon) and was serving his 52-month sentence at United States Penitentiary (USP) Big Sandy in Inez, Kentucky. On February 22, 2023, a detainer action letter was filed by United States Department of Justice Federal Bureau of Prisons (BOP) advising the Macomb County Sheriff that defendant was in federal custody and had charges pending in Macomb County. In April 2023, defendant moved *in propria persona* to dismiss his charges for violating the 180-day rule of the Interstate Agreement on Detainers (IAD), MCL 780.601. The Macomb County Sheriff sent defendant's letter and request for disposition to the 38th District Court where the charges were filed.

Defendant was arraigned on the charges in district court on December 15, 2023, and, through his defense counsel, filed a motion to dismiss for a second time, which was set for hearing on the date set for the preliminary examination.[5] The district court took the motion under advisement, held the preliminary examination, and bound over defendant. Defense counsel then

---

[3] According to the victim, Johnson reentered Gage's house through the front door as the victim and another customer were exiting via the side door, after which Johnson shut (and apparently locked) the side door.

[4] Police obtained the phone number that defendant called by viewing the caller identification on the cordless phone, which turned out to be defendant's own cell phone number. Police then obtained cell phone records for defendant's cell phone via subpoena.

[5] There is no indication of either the prearraignment *in propia persona* motion to dismiss or the subsequent motion to dismiss by defense counsel in the district court register of actions, but they are referenced in the preliminary examination transcript.

raised the motion to dismiss again. After some discussion on the record, defense counsel agreed to withdraw the motion in district court, so that the motion could be heard by the circuit court. Shortly after defendant waived arraignment on the information, defense counsel then filed the motion to dismiss in the circuit court, arguing the prearrest delay prejudiced him and his right to a speedy trial was violated. In the motion to dismiss, defendant also argued that the trial court violated the 180-day rule in MCL 780.131(1). The trial court denied defendant's motion to dismiss, determining defendant's speedy-trial claim was premature and that the prearrest delay did not prejudice him.

Trial commenced on June 11, 2024. Defendant was found guilty as noted and sentenced as delineated above. This appeal followed.

## II. MOTION TO DISMISS

Defendant claims the trial court erred when it denied his motion to dismiss. We disagree.

## A. STANDARDS OF REVIEW

"We review a trial court's decision on a motion to dismiss charges against a defendant for an abuse of discretion." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). "A trial court may be said to have abused its discretion only when its decision falls outside the range of principled outcomes." *Id.* "A challenge to a prearrest delay implicates constitutional due process rights, which this Court reviews de novo." *People v Cain*, 238 Mich App 95, 108; 605 NW2d 28 (1999). The issue whether the 180-day rule set forth in MCL 780.131 was violated is a legal question that is reviewed de novo. *People v McLaughlin*, 258 Mich App 635, 643; 672 NW2d 860 (2003). "Whether defendant was denied his right to a speedy trial is an issue of constitutional law, which we also review de novo." *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). "The interpretation and application of the IAD is a question of law that we review de novo." *People v Duenaz*, 306 Mich App 85, 108; 854 NW2d 531 (2014). "The interpretation and application of a statute is a question of law that we review de novo." *People v Patton*, 285 Mich App 229, 231; 775 NW2d 610 (2009).

## B. ANALYSIS

Defendant contends the trial court erred when it denied his motion to dismiss for: (1) prearrest delays; (2) violation 180-day rule under MCL 780.131; (3) violation of his right to a speedy trial; and (4) violation of the IAD.

## 1. PREARREST DELAYS

"A prearrest delay that causes substantial prejudice to a defendant's right to a fair trial and that was used to gain tactical advantage violates the constitutional right to due process." *People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014). " 'Mere delay between the time of the commission of an offense and arrest is not a denial of due process. There is no constitutional right to be arrested.' " *Patton*, 285 Mich App at 236, quoting *People v Anderson*, 88 Mich App 513, 515; 276 NW2d 924 (1979).

"Michigan applies a balancing test to determine whether a delay violates a defendant's constitutional right to due process of law." *People v Scott*, 324 Mich App 459, 462; 924 NW2d 252 (2018). "Under this balancing test, a defendant bears the initial burden of demonstrating prejudice." *Id*. After demonstrating prejudice, the burden shifts to the prosecution to persuade the trial court the reason for the delay justified the prejudice defendant incurred. *Id*. at 462-463. "Defendant must present evidence of actual and substantial prejudice, not mere speculation." *Woolfolk*, 304 Mich App at 454. "A defendant cannot merely speculate generally that any delay resulted in lost memories, witnesses, and evidence, even if the delay was an especially long one." *Id*. (internal citation omitted). "To meet the initial burden of demonstrating prejudice, the defendant must present evidence of 'actual and substantial prejudice to his right to a fair trial.' " *Scott*, 324 Mich App at 463, quoting *People v Adams*, 232 Mich App 128, 134; 591 NW2d 44 (1998). "Substantial prejudice is that which meaningfully impairs the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected." *Patton*, 285 Mich App at 237.

In the lower court, the prosecution responded to defendant's motion to dismiss by arguing, *inter alia*, that defendant was unable to prove the issue of prejudice. In a rebuttal brief filed by defendant, he claimed the delay was prejudicial because it (1) prevented him from obtaining exculpatory information from Gage, who was missing, and (2) delayed his preliminary examination.

Although defendant asserted that he was prejudiced from the delay because it prevented him from locating Gage, who had exculpatory evidence, defendant never actually provided evidence that Gage was unavailable as a witness, or that the delay caused Gage to suffer memory loss. Notably, Gage was called as a witness at trial, contradicting defendant's claim that he was missing. Gage's testimony did not indicate he suffered from memory loss or impairment. Gage testified about his business and relationship with Johnson. He did not recall seeing Johnson retrieve the Glock from the drop ceiling but noted he did not know what Johnson did when alone in the basement. Arguably, that testimony was exculpatory because it was contrary to the testimony of the victim on the issue of whether codefendant possessed the same type of gun subsequently used in the armed robbery. But defendant's assertion that Gage would be unavailable to provide such arguably exculpatory evidence was without basis and ultimately proved to be incorrect.

As noted above, although Gage appeared at the trial, defendant could nonetheless argue that the delay affected the witness's ability to recall facts impacting his ability to present a defense; however, defendant does not cite any such evidence. Thus, defendant both failed to demonstrate Gage was missing and failed to establish the delay impacted Gage's testimony. As such, defendant was not able to establish prejudice that meaningfully impaired his "ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected." *Patton*, 285 Mich App at 237.

In his motion to dismiss, defendant also claimed the prearrest delay violated his statutory right to a preliminary examination under MCR 6.110(A). Our Supreme Court determined MCL 767.4 established the statutory right to a preliminary examination. *People v Peeler*, 509 Mich 381, 391-392; 984 NW2d 80 (2022). "Thus, for a case to proceed 'in like manner as upon formal

complaint,' MCL 767.4, a preliminary examination must be held unless waived by the defendant." *Id*. at 393.

MCR 6.110(A), entitled "Right to Preliminary Examination," states:

Where a preliminary examination is permitted by law, the people and the defendant are entitled to a prompt preliminary examination. The defendant may waive the preliminary examination with the consent of the prosecuting attorney. Upon waiver of the preliminary examination, the court must bind the defendant over for trial on the charge set forth in the complaint or any amended complaint. The preliminary examination for codefendants shall be consolidated and only one joint preliminary examination shall be held unless the prosecuting attorney consents to the severance, a defendant seeks severance by motion and it is granted, or one of the defendants is unavailable and does not appear at the hearing.

MCR 6.110(B) establishes the time for preliminary examinations and states, in relevant part:

(1) Unless adjourned by the court, the preliminary examination must be held on the date specified by the court at the arraignment on the warrant or complaint. If the parties consent, the court may adjourn the preliminary examination for a reasonable time. If a party objects, the court may not adjourn a preliminary examination unless it makes a finding on the record of good cause shown for the adjournment. A violation of this subrule is deemed to be harmless error unless the defendant demonstrates actual prejudice.

"Where a criminal prosecution is initiated by the filing of an information rather than by indictment, the accused has a statutory right to a preliminary examination." *People v McGee*, 258 Mich App 683, 695; 672 NW2d 191 (2003). "The right to a preliminary examination is more than a matter of procedure." *Id*.

According to the district court register of actions, defendant was arraigned on December 15, 2023, and the preliminary examination was scheduled for January 3, 2024. The preliminary examination was rescheduled and held on March 26, 2024. The district court noted the delay was attributed to issues with bringing defendant to district court from federal custody, stating: "I know that this matter has been scheduled and adjourned a number of times because we had problems bringing him over from the Federal prison . . . "

While MCR 6.110(B) requires the preliminary examination to be held on the day scheduled at arraignment absent good cause for the delay, defendant did not challenge the delay. Rather, defendant's motion to dismiss in the circuit court argued Johnson, his codefendant, was bound over after his preliminary examination, which was held on January 20, 2022. In his motion to dismiss, defendant did not provide an argument other than noting Johnson had his preliminary examination before and without defendant. Under MCR 6.110(A), the preliminary examination of codefendants "shall be consolidated and only one joint preliminary examination shall be held unless the prosecuting attorney consents to the severance, a defendant seeks severance by motion and it is granted, *or one of the defendants is unavailable and does not appear at the hearing*."

(Emphasis added.) There was no evidence Johnson moved to sever his preliminary examination, and the prosecution did not address the issue of severance.

Defendant admitted at his preliminary examination that he did not attempt to notify the district court of his federal incarceration until 2023. Again, MCR 6.110(A) establishes codefendants have a joint preliminary examination unless one of the defendants is unavailable. Defendant's motion and the detainer action letter were not sent until early 2023, and the district court did not receive it until April 2023. On appeal, defendant claims Johnson was also in federal prison in 2021, but issued a writ of habeas corpus *ad prosequendum*[6] for his appearance at his January 20, 2022 preliminary examination. Defendant attached Johnson's register of actions, which indicated his sentence was concurrent with his federal sentence. However, Johnson's register of actions did not indicate the federal prison where he was housed (or whether it was the same federal prison at which defendant was housed).

The procedural history of codefendant Johnson's case is not the same as the procedural history in defendant's case. In his original *in propia persona* motion to dismiss, defendant indicated he was serving his sentence at USP Big Sandy in Kentucky, but in his letter to the Macomb County Sheriff, defendant indicated he was at the USP Canaan in Pennsylvania. As the district court noted, bringing defendant to court for his preliminary examination was a challenge, which required multiple adjournments. Further, defendant admitted he did not notify the district court of his location until April 2023. Given the multiple sources of information indicating defendant was held at different federal prisons and difficult to bring to court, it was reasonable to determine defendant was unavailable when Johnson's preliminary examination was held.

Even if the delay was not for good cause and defendant was available, MCR 6.110(B) states that "[a] violation of this subrule is deemed to be harmless error unless the defendant demonstrates actual prejudice." MCR 6.110(B). In his motion to dismiss, defendant did not claim prejudice resulting from the delay in his preliminary examination. Defendant merely cited the relevant court rules and noted Johnson's preliminary examination was conducted without him. On appeal, defendant argues the delay violated his right to due process under the United States Constitution, but never explains or provides any examples of how his rights were violated, i.e., how he was actually prejudiced by the delay of his preliminary examination. Additionally, defendant conceded at the circuit court motion hearing that there was probable cause to bind his case over from the district court. Without claiming prejudice arising from the delay, any error in delaying defendant's preliminary examination was harmless. MCR 6.110(B).

Defendant was unable to establish that the delay between the time of the commission of the offense and his preliminary examination caused any prejudice. Gage, who defendant claimed was missing, appeared for trial and testified. Defendant fails to cite testimony indicating Gage's memory was impacted by the delay. While there was a delay in defendant's preliminary examination, the district court noted the delay resulted from the difficulty in bringing defendant to

---

[6] A writ of habeas corpus ad prosequendum "is an order by a court directing authorities to produce a prisoner to face criminal charges." *People v McLemore*, 411 Mich 691, 692 n 1; 311 NW2d 720 (1981).

court from federal prison. Even if the delay was not for good cause, defendant failed to establish prejudice, making any error harmless. Consequently, the trial court did not err when it denied defendant's motion to dismiss for prearrest delays. See *Woolfolk*, 304 Mich App at 454 ("A prearrest delay that causes substantial prejudice to a defendant's right to a fair trial and that was used to gain tactical advantage violates the constitutional right to due process.").[7].

## 2. MCL 780.131

Defendant claims the trial court erred when it denied his motion to dismiss for a violation of the 180-day rule. MCL 780.131(1) establishes the 180-day rule:

> Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail.

"The object of this rule is to dispose of new criminal charges against inmates *in Michigan correctional facilities*; the rule requires dismissal of the case if the prosecutor fails to commence action on charges pending against an inmate within 180 days after the Department of Corrections (DOC) delivers notice of the inmate's imprisonment." *People v Lown*, 488 Mich 242, 246; 794 NW2d 9 (2011) (emphasis added). MCL 780.133 details the consequence for a violation of the 180-day rule:

> In the event that, within the time limitation set forth in section 1 of this act, action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

"The statutory 180-day rule, MCL 780.131 and MCL 780.133, may be invoked to require dismissal of a criminal case only if action is not commenced in the case within 180 days after the prosecutor

---

[7]    In his brief on appeal, defendant relies upon *People v Bisard*, 114, Mich App 784, 790; 319 NW2d 670 (1982), for the proposition that "[w]hen a delay is deliberately undertaken to prejudice a defendant, little actual prejudice need be shown to establish a due process claim." However, defendant referred to no evidence indicating that delay was undertaken to prejudice his defense.

receives the required notice from the DOC." *Lown*, 488 Mich at 272. "[T]he rule requires the prosecutor to proceed promptly within 180 days to move the case to the point of readiness for trial." *Id*. "[D]ismissal is not required under MCL 780.133 unless, after some preliminary step in the case occurs, that initial action is followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly." *Id*. "[T]he 180-day period is a fixed period of consecutive days. . . ." *Id*. at 273.

Defendant claims the prosecution failed to move the case to readiness for trial within 180 days of notice, arguing the prosecution was aware of his federal incarceration since February 22, 2023, from the detainer action letter sent to the Macomb County Sheriff. "Our primary purpose in construing statutes is 'to discern and give effect to the Legislature's intent.' " *Williams*, 475 Mich at 250, quoting *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). "When statutory language is clear, this Court presumes that 'the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written.' " *People v Rivera*, 301 Mich App 188, 192; 835 NW2d 464 (2013), quoting *Williams*, 475 Mich at 250.

"The clear language of MCL 780.131(1) provides that MDOC must send written notice, by certified mail, *to the prosecutor* to trigger the 180-day requirement." *Rivera*, 301 Mich App at 192. See also, *Williams*, 475 Mich at 256 (the 180-day rule statute expressly provides that notice must be sent to the prosecuting attorney).

In this case, it appears from the record that the BOP (not the Michigan Department of Corrections) sent its detainer action letter to the Macomb County Sheriff and defendant. Defendant then sent a letter to the Macomb County Sheriff's warrants and records department, which in turn suggested he contact the 38th District Court and request a "writ hearing." Defendant then sent an *in propia persona* motion to dismiss to the district court in April 2023. At the circuit court's hearing on defendant's motion to dismiss, the prosecution confirmed it never received the BOP detainer letter, noting it was sent to the district court. The prosecution never provided the date it was informed of defendant's federal incarceration. However, because the letter was never sent to the prosecution, the 180-day rule was not triggered. See *Rivera*, 301 Mich App at 192 ("Here, although MDOC sent a notice to the district court, it did not send, by certified mail, a notice to the prosecuting attorney. Thus, the 180-day rule was never triggered, so it could not have been violated; consequently, the trial court erred by reaching this conclusion."). Consequently, the trial court did not err when it denied defendant's motion to dismiss for a violation of the 180-day rule.

## 3. SPEEDY-TRIAL VIOLATION

In his Standard 4 Brief, defendant claims his right to a speedy trial was violated and the trial court erred when it denied his motion to dismiss. Both the Michigan and United States Constitutions provide criminal defendants the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. The right to a speedy trial is also established by statute and the court rules. See MCL 768.1 ("[P]ersons charged with a crime are entitled to and shall have a speedy trial . . . ."); MCR 6.004(A) ("The defendant and the people are entitled to a speedy trial and to a speedy resolution of all matters before the court.").

"The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261. "[A] defendant's right to a speedy trial is not violated after a fixed number of days." *Id*. "Rather, when evaluating a speedy-trial claim, the reviewing court is required to balance four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 3 (quotation marks and citation omitted). "When the delay is more than 18 months, prejudice is presumed, and the prosecution must show that no injury occurred." *Rivera*, 301 Mich App at 193, citing *Williams*, 475 Mich at 262. To determine whether an error occurred, this Court must analyze the four factors elucidated in *Smith*.

With respect to the length-of-delay factor, defendant was not arrested in this matter until his arraignment. Defendant was arrested on May 14, 2020 for an unrelated federal offense. Our Supreme Court held the time for a speedy-trial claim runs from the date of arrest. *Williams*, 475 Mich at 261. While the BOP detainer letter was sent on February 22, 2023, defendant was not arraigned on this matter until December 15, 2023. As such, the time for defendant's speedy-trial claim began on December 15, 2023, which was less than six months before trial began on June 11, 2024. Prejudice is presumed only after 18 months. *Id*. at 262. As such, defendant bears the burden of establishing prejudice. See *Rivera*, 301 Mich App at 193 ("When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice.").

The reason-for-delay factor does not weigh in defendant's favor. "In assessing this factor, reviewing courts 'may consider which portions of the delay were attributable to each party when determining whether a defendant's speedy trial rights have been violated and may attribute unexplained delays—or inexcusable delays caused by the court—to the prosecution.' " *Smith*, ___ Mich App at ___; slip op at 3, quoting *Lown*, 488 Mich at 261-262. Defendant claims the four years he was in federal prison is inexcusable delay attributable to the prosecution. However, as noted above, the time starts when defendant was arrested for this case, which was when he was arraigned on December 15, 2023, less than six months before his trial began. Defendant's initial delays were attributed to the difficulty in bringing him to court while he was in federal prison, which caused his preliminary examination to be adjourned.

"Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158 (1997) (quotation marks and citation omitted). While technically attributable to the prosecution, these delays were relatively brief and inherent in the system given the circumstances of defendant's federal incarceration.

Third, defendant asserted his right to a speedy trial in his *in propria persona* motion to dismiss in April 2023. While defendant was not arraigned in the district court until December 2023, the trial court and then circuit court were aware of defendant's assertion. As such, this issue weighs in defendant's favor. However, it appears the trial court acknowledged defendant's assertion. Following his arraignment, defendant's trial began less than six months later.

The last factor is prejudice. Because defendant's delay was not greater than 18 months, prejudice is not presumed, and defendant bears the burden establishing prejudice. See *Rivera*, 301

Mich App at 193." "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense.' " *Smith*, ___ Mich App at ___; slip op at 6, quoting *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Williams*, 475 Mich at 264 (quotation marks and citation omitted). "Loss of memory caused by the passage of time can also prejudice the defense." *Smith*, ___ Mich App at ___; slip op at 6. Where witnesses become unavailable or were lost during the delay, prejudice is obvious. *Id*. However, when considering prejudice, "a reviewing court should look for examples about how the delay between arrest and trial harmed the defendant's ability to defend against the charges." *Id*.

In his circuit court motion to dismiss, defendant incorrectly claimed the time of the arrest started on May 14, 2020, when he was arrested on unrelated federal charges, and on this basis, incorrectly presumed prejudice. The only prejudice defendant claimed concerning his defense was his inability to find Gage, who was called as a witness at trial. We have already established that defendant failed to provide evidence of the delay impacting Gage's memory. We have also noted that Gage's testimony was favorable to defendant because Gage did not recall Johnson retrieving the Glock from the ceiling and also asserted he never kept a gun in the house.

Defendant argued that he suffered prejudice to his person by being deprived of the possibility of serving his sentence in this case concurrently with his sentence in his federal case.[8] But again, "[t]he time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Williams*, 475 Mich at 261. Defendant was not arrested on these charges until his arraignment on December 23, 2023, and his trial began less than six months thereafter. Prejudice is not presumed, and defendant fails to establish prejudice resulting from the delay. While defendant asserted his right to a speedy trial, the record demonstrates that his case was disposed of within six months of his arraignment. The delays defendant experienced from his arraignment to trial were inherent in the system because defendant was issued a writ of habeas corpus *ad prosequendum* for his appearance from federal custody in a different state. Additionally, those delays were brief. Accordingly, the trial court did not err when it denied defendant's motion to dismiss for a violation of his right to a speedy trial.

### 4. IAD

In his Standard 4 Brief, defendant asserts he was entitled to a dismissal of the charges under the IAD.

"The purpose of the IAD is to facilitate the prompt disposition of outstanding charges against an inmate incarcerated in another jurisdiction." *Patton*, 285 Mich App at 232. Michigan,

---

[8] At the sentencing hearing, defendant argued that he should have been given credit for the approximately 48 months he was in federal custody, which he said was part of a proposed Cobbs agreement in this matter (alternatively, defendant argued that he should be given a sentence at the bottom end of the guidelines, i.e., a minimum sentence of 126 months, again, due to the fact that he was incarcerated for four years in a federal penitentiary). However, the trial judge noted that defendant rejected the Cobbs agreement, went to trial, and was found guilty by the jury.

the Federal Government, the District of Columbia, and 47 other states have entered into the IAD. *People v Swafford*, 483 Mich 1, 8; 762 NW2d 902 (2009). " 'Once a detainer is filed, it is then that the IAD is triggered and compliance with the provisions of the agreement is required.' " *Patton*, 285 Mich App at 232, quoting *People v Gallego*, 199 Mich App 566, 574; 502 NW2d 358 (1993). "While there is no exact definition of the term 'detainer,' it has generally been recognized to mean written notification filed with the institution in which a prisoner is serving a sentence advising that the prisoner is wanted to face pending charges in the notifying state." *Gallego*, 199 Mich App at 574.

"The IAD provides that an inmate incarcerated in one state may be transported to another for trial on charges in the receiving state." *Duenaz*, 306 Mich App at 108. "The main purpose of the statute, stated in Article I, is to encourage speedy disposition of pending charges and prevent undue interference with treatment and rehabilitation programs." *Id*. "Article III(a) of the IAD sets forth the procedure for a prisoner against whom a detainer is filed to notify the prosecutor in the detaining state of his place of imprisonment and to request final disposition of the charges." *Id*.

Article III(a) of the IAD states:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint*: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. [MCL 780.601 (emphasis added).]

The 180-day time period commences on the date the prosecuting office and court receives the prisoner's request for a final disposition of the charges. *Duenaz*, 306 Mich App at 111.

The BOP detainer letter, *in propia persona* motion to dismiss, and letter requesting a final disposition were attached to the motion to dismiss filed by his defense counsel. The detainer letter was from the BOP to the Macomb County Sheriff and identified defendant, his location, and the charges against him. Accordingly, the IAD and its provisions applied. *Patton*, 285 Mich App at 232.

Defendant's letter requesting a final disposition was sent to the district court as evidenced by the handwritten note on the letter. However, the prosecution never received the letter. At the

motion hearing, the prosecution stated: "On or about February 22nd of 2023, is when the U.S. Department of Justice sent a detainer letter to the Sheriff's Department; Sheriff's Department gets it and says, wrong place—never sent it to my office, they [sent] it back to Eastpointe."

This Court has held the 180-day time period of the IAD does not begin until the defendant delivers the request to the appropriate prosecuting office and court. *Duenaz*, 306 Mich App at 111, see also *Fex v Michigan*, 507 US 43, 52; 113 S Ct 1085; 122 L Ed 2d 406 (1993). In this instance, the prosecution never received defendant's request for a final disposition of the charges. In his Standard 4 Brief, defendant does not address this issue. "[T]he notice requirements of the IAD must be complied with strictly." *Gallego*, 199 Mich App at 573. While defendant sent a request for a final disposition of his case, the 180-day time period of the IAD did not begin tolling because the prosecution never received defendant's request until it was sent as an exhibit to the motion to dismiss filed in the circuit court. This occurred well within 180-days of when defendant was brought to trial. Accordingly, the trial court properly denied dismissal of the charges under the IAD.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 Brief, Defendant claims defense counsel was ineffective. We disagree.

### A. PRESERVATION AND STANDARDS OF REVIEW

"[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). A defendant can also preserve "this issue for appellate review by filing in this Court a motion for remand to the trial court for a *Ginther*[9] hearing." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant did not undertake either of these steps to preserve his claim of ineffective assistance of counsel. Accordingly, this issue is unpreserved.

When preserved, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "We review unpreserved claims, both constitutional and nonconstitutional, for outcome-determinative plain error." *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011) "We review unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *Id*.

### B. ANALYSIS

Defendant claims defense counsel was ineffective for failing to move to dismiss the charges under the IAD. The Michigan and United States Constitutions guarantee criminal defendants the right to be represented by an attorney. Const 1963, art 1, § 20; US Const, Am VI. "The constitutional right to counsel is not merely the right to have a lawyer stand or sit nearby; rather, a

---

[9] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

criminal defendant has the right to the effective assistance of counsel." *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023). "A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010).

"Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). To demonstrate deficient performance, "the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *People v Anderson*, 490 Mich 281, 290; 806 NW2d 676 (2011). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant then must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290. "Defendant also 'bears the burden of establishing the factual predicate for his claim.' " *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant claims defense counsel's failure to move to dismiss the charges under the IAD fell below an objective standard of reasonableness. This argument lacks merit. As discussed, the IAD did not apply to defendant's case because the prosecution never received defendant's request. Defense counsel attached defendant's *in propria persona* motion to dismiss raising the IAD claim to the motion to dismiss defense counsel filed on defendant's behalf in the circuit court. Defense counsel was aware of defendant's claim and brought it to the trial court's attention. Therefore, defense counsel was not ineffective. See *Fyda*, 288 Mich App at 450 ("To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense.").

## IV. CIVIL-RIGHTS VIOLATIONS

In his Standard 4 Brief, defendant claims his civil rights were "violated during the course of the proceedings and incarceration." Defendant never raised this issue in the trial court, making it unpreserved. See *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021) ("To preserve an issue, a party must raise it before the trial court."). Once again, unpreserved claims are reviewed by this Court for outcome-determinative plain error. *Armisted*, 295 Mich App at 46. However, defendant fails to identify the civil rights that he claims were violated or provide an argument to support his position. " 'The failure to brief the merits of an allegation of error constitutes an

-13-

abandonment of the issue.' " *People v Francis*, 347 Mich App 560, 567; 16 NW3d 323 (2023), quoting *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004).  As such, this issue is abandoned.

Affirmed.

/s/ Christopher M. Trebilcock
/s/ Sima G. Patel
/s/ Randy J. Wallace